■ In the Matter of ARLENE STEINBERG-FISHER, Respondent, v NORTH SHORE TOWERS APARTMENTS, INC., et al., Appellants, et al., Respondent. [51 NYS3d 585]—

In a proceeding pursuant to Executive Law § 298 and CPLR article 78 to review a determination of the New York State Division of Human Rights dated March 12, 2014, dismissing the petitioner's administrative complaint upon a finding of no

probable cause to believe that North Shore Towers Apartments, Inc., engaged in an unlawful discriminatory practice, North Shore Towers Apartments, Inc., and the New York State Division of Human Rights separately appeal, as limited by their respective briefs, from so much of a judgment of the Supreme Court, Queens County (Raffaele, J.), dated August 21, 2014, as granted the petition and remitted the proceeding to the New York State Division of Human Rights for further proceedings.

Ordered that the judgment is affirmed insofar as appealed from, with one bill of costs.

The petitioner filed a complaint with the New York State Division of Human Rights (hereinafter the Division) against North Shore Towers Apartments, Inc. (hereinafter North Shore), a cooperative apartment building with more than five units, in which she leases an apartment as a shareholder. The petitioner alleged that North Shore discriminated against her by not granting her an accommodation from its rule requiring that before any alterations to an apartment could be made, a shareholder must execute an alteration agreement, providing, inter alia, that all alterations had to be completed within 90 days from the start date, or the shareholder would be subjected to financial penalties. Before filing her complaint with the Division, the petitioner presented North Shore with a detailed letter from her doctor stating that she suffers from attention deficit hyperactivity disorder and a sleep disorder, which prevent her from being able to complete tasks within strict time constraints.

No one has disputed that the petitioner suffers from a disability within the meaning of Executive Law § 296 (18) (2). Nevertheless, the Division dismissed the complaint, finding no probable cause to believe that North Shore engaged in an unlawful discriminatory practice based on the petitioner's disability. The Division found that the petitioner's request for an accommodation was not reasonable because she "refused to agree to any time limitations whatsoever" and "that the renovations in [the petitioner]'s apartment have been ongoing since 2003."

The petitioner then commenced this proceeding pursuant to Executive Law § 298 and CPLR article 78, seeking review by the Supreme Court of the Division's determination. In a judgment dated August 21, 2014, the court granted the petition, finding the decision of the Division to be arbitrary and capricious, set aside the dismissal of the petitioner's complaint, and remitted the matter to the Division for further proceedings. We affirm insofar as appealed.

Pursuant to Executive Law § 296 (18) (2): "It shall be an un-

lawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right of ownership of or possession of or the right to rent or lease housing accommodations: . . . To refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling, including reasonable modification to common use portions of the dwelling."

To establish that a violation of the Human Rights Law (Executive Law art 15) occurred and a reasonable accommodation should have been made, the petitioner was required to show that she is disabled, that she is otherwise qualified for the tenancy, that because of her disability an accommodation is necessary in order for her to use and enjoy the apartment, and that the accommodation sought was reasonable (*see Matter of Delkap Mgt., Inc. v New York State Div. of Human Rights*, 144 AD3d 1148, 1150-1151 [2016]; *Matter of Kennedy St. Quad, Ltd. v Nathanson*, 62 AD3d 879, 880 [2009]).

Where, as here, "the [Division] renders a determination of no probable cause without holding a hearing, the appropriate standard of review is whether the probable cause determination was arbitrary and capricious or lacked a rational basis" (*Matter of Walker v NYS Div. of Human Rights*, 129 AD3d 980, 981 [2015]; *see Matter of Sahni v Foster*, 145 AD3d 733 [2016]; *Matter of Orosz v New York State Div. of Human Rights*, 88 AD3d 798, 798-799 [2011]). The Division's determination is "entitled to considerable deference due to its expertise in evaluating discrimination claims" (*Matter of Camp v New York State Div. of Human Rights*, 300 AD2d 481, 482 [2002]).

The Supreme Court properly found that the Division's determination of no probable cause was without regard to the facts and was arbitrary and capricious because it lacked a sound basis (*see Matter of Mambretti v New York State Div. of Human Rights*, 129 AD3d 1696, 1697 [2015]; *Moore v State Div. of Human Rights*, 110 AD2d 507, 508 [1985]; *Bachman v State Div. of Human Rights*, 104 AD2d 111, 114-115 [1984]). The Division's factual findings that the petitioner refused to agree to any time limitation and that the renovations have been ongoing since 2003 are not supported by the record. There was evidence that an attorney for the petitioner sent the managing agent for North Shore a letter proposing that the petitioner be permitted three 90-day periods to complete the alterations, subject to possible force majeure extensions. The petitioner also submitted evidence that North Shore rejected her offer out of hand and

that it required that the alteration agreement "be executed as presented." Notably, in her complaint to the Division, the petitioner sought a "more relaxed time frame" within which to complete the alterations. Thus, the Division's finding that the requested accommodation was unreasonable was without regard to the facts in the record.

The Division's determination that renovations have been ongoing in the petitioner's apartment since 2003 is unsupported by the record. The uncontroverted evidence submitted by the petitioner demonstrates that the petitioner's mother, who had previously leased the apartment, had received permission from North Shore to perform certain renovations in 2003 and that some minimal work was performed in accordance therewith. Thereafter, the apartment sat empty and the renovation project was dormant for long periods of time. Notably, it is undisputed that during those periods of dormancy, all sums for maintenance and other charges for the apartment due to North Shore were paid. North Shore was not prejudiced by the fact that no renovations were performed while the apartment was uninhabited for long periods of time.

Moreover, giving credence to the petitioner's version of the events, and based on the facts established by the record, there is some evidence that North Shore unlawfully discriminated against the petitioner by refusing to make a reasonable accommodation in its rules and policies, despite such accommodation being necessary to afford her the opportunity to use and enjoy the apartment (*see Reyes v Fairfield Props.*, 661 F Supp 2d 249, 261, 269-270 [ED NY 2009]). Thus, it is undisputed that North Shore, despite being presented with evidence of the petitioner's disability and its impact on her ability to adhere to rigid time frames, refused to offer her any accommodation whatsoever from the 90-day rule in the alteration agreement.

With respect to whether the accommodation sought was reasonable, it is notable that North Shore's purported justifications for refusing to accommodate the petitioner in any manner are entirely conclusory. North Shore offered no evidence which tended to rebut the petitioner's contention that the remaining work to be performed was nonstructural and would not disturb other residents in the building. Under the circumstances, the petitioner satisfied her burden of establishing that there was probable cause to believe that North Shore engaged in an unlawful discriminatory practice (*see Matter of Mambretti v New York State Div. of Human Rights*, 129 AD3d at 1696-1697).

We reject North Shore's remaining contention, that judicial

review of its decision is foreclosed by the business judgment rule, as "decision making tainted by discriminatory considerations is not protected by the business judgment rule" (*Fletcher v Dakota, Inc.*, 99 AD3d 43, 48 [2012]; *see Waterways at Bay Pointe Homeowners Assn., Inc. v Waterways Dev. Corp.*, 132 AD3d 975, 978 [2015]).

Accordingly, we affirm the judgment insofar as appealed from. Dillon, J.P., Roman, Hinds-Radix and Duffy, JJ., concur.